GILLIS, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 17—November 10, 1931.*

For the defendant in error there was a brief by *Walter A. Graunke,* district attorney of Marathon county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Graunke* and *Mr. Messerschmidt.*

ROSENBERRY, C. J. At the time of intercourse the complaining witness was twenty-one years of age, weighed about one hundred twenty pounds, and was in vigorous normal health. She testified that the last act of intercourse with the defendant was on April 6, 1930, two days after her monthly sickness. She also had her customary menses ending on the 6th of May, except that they lasted two days instead of the usual four days. When her menses did not recur in June, she suspected that she was pregnant. While she testified to previous acts of intercourse with the defendant, she was positive that no act occurred after April 6, 1930. The complaining witness said nothing about her pregnancy to any of her relatives until she told her parents about Christmas time and made no charges against the defendant although she testifies she had it in her mind to do so. Early in the month of February she consulted a physician at Marathon City, went to see the district attorney, and on the 4th of February she went to the city of Milwaukee to be confined, where she was delivered of a full-term, normal child, weighing eight pounds two ounces, on February 20, 1931. There is no history of any illness of the complaining witness nor any circumstance that would tend to indicate anything but a perfectly normal, regular pregnancy.

The only expert sworn was Dr. J. M. Freeman of Wausau, who testified that the average pregnancy from the time of conception is 280 days; that in exceptional cases babies have been in utero for ten months. Upon cross-examination

the doctor testified that he had one patient who had gone one month overtime; that at the expiration of the normal period active labor began, was then suspended, and one month later she was delivered of a child. That was the only case in his experience which he could recall. He also testified that the fact that the child of the complaining witness was slightly overweight would indicate that "it was probably a little past due."

There was no evidence indicating that the child when born had any other characteristics than those to be expected in a normal child. The plaintiff testified that she had never at any time had intercourse with any other man. Upon her testimony the period of pregnancy was 320 days, being twelve days beyond eleven lunar months, the ordinary period being ten lunar months.

The question presented here is whether or not upon this testimony the jury may find beyond a reasonable doubt that the defendant is the father of the child. The medical testimony in this case as well as the medical literature to which we have been referred, indicates that while such cases of extended pregnancy as this are not unknown, they are extremely rare. The whole matter is discussed in *Estate of McNamara*, 181 Cal. 82, 183 Pac. 552. In that case the last intercourse was 304 days prior to the birth of the child and the court held that beyond a reasonable doubt the husband was not the father of the child. Although that case related to the application of the presumption of legitimacy rather than paternity of a bastard child, the cases were brought together and exhaustively reviewed. It would serve no useful purpose to review the cases. More cases have arisen regarding the application of the presumption of legitimacy than with respect to paternity in bastardy cases.

In view of the extraordinary length of the period of pregnancy, as to which, under the testimony of the complaining witness, there can be no doubt, and the fact that there is

nothing to indicate anything other than a perfectly normal condition, and in view of the conduct of the complaining witness, especially the total failure of herself and her parents to make any preparation for the birth of the child in January, when it should have been expected if due to an act of intercourse on the preceding April 6th, the fact that no physician was consulted, no complaint was made to the authorities prior to that time, but that about two weeks before the time the child should be expected, computing the period from the May menstrual period, she did consult a doctor, did go to the district attorney, then went to Milwaukee to give birth to the child, there being no suggestion anywhere in the evidence that there was anything out of the ordinary course of nature in the pregnancy, it is considered that no one can say beyond a reasonable doubt that the defendant is the father of this child.   The most that can be said, and to say that taxes one's credulity, is that such a thing was barely possible.   The fact that in the course of the history of medical science a few cases have been gathered together which in the main depend for their authenticity upon the unsupported statement of the mother, from which it appears that such protracted pregnancies may occur, does not satisfy the rule of law.

We are well aware that these are matters ordinarily for the jury; that the evidence need not be sufficient to convince the court; that it is sufficient to sustain a verdict if upon the evidence the jury may find the fact in question beyond a reasonable doubt.   Against these few scattering cases there is the vast common experience of mankind with the regularity of the course of nature in this respect both as regards man and the mammals generally.   If there was any evidence of a delayed pregnancy, if there was any evidence that the child when born exhibited signs of a protracted pregnancy or other untoward circumstance, the case might be quite different.   While the complaining witness in this case has had a

most unfortunate experience, it is on the other hand a most serious matter to permit the paternity of the child to be fixed upon the defendant under these circumstances even if he was guilty of misconduct with the plaintiff. If his conduct in that regard was such as to make him deserving of punishment, he should not be punished for something of which he is not guilty. The law requires guilt to be established by evidence which convinces the jury beyond a reasonable doubt.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.