[File No. 6251.]

STATE OF NORTH DAKOTA, Respondent, v. PAUL MULDOON, Appellant.

(254 N. W. 475.)

Opinion filed April 19, 1934.

*Fredricks & Fredricks,* for appellant.

*Russell D. Chase,* for respondent.

Burke, J. This is an action to determine the parentage of a child born the 7th day of April, 1932. The mother of the child, who was 21 years of age at the time of the trial, testified that she first met the defendant the last of July, 1931 and that their first illicit sexual relation occurred in the first week of August, 1931. She does not remember the exact date but says it was in the first week of August, 1931. The defendant, as a witness in his own behalf, testified that there never was any illicit sexual relation between the mother of the child and himself at any time.

The case was submitted to the jury and a verdict was returned finding that the defendant was the father of the child, upon which judgment was entered and the defendant appeals.

It is the contention of the appellant that the evidence is insufficient to support the verdict; that upon the record the first illicit sexual act, if any, was in the first week in August, 1931, and the child was born on the 7th day of April, 1932. Assuming that the illicit act occurred on the first day of the first week of August, 1931, the child was born 250 days thereafter, or thirty days short of the gestation period. There

is no evidence to show a premature birth, although the child was born at a hospital with a doctor and nurses in charge and in the absence of evidence showing a premature birth the presumption is that it was natural and if a natural birth it was necessarily begot before the 1st of August, 1931.

"The burden is on the state to show that the defendant is the father of the (child), and is not on the defendant to establish his defense." 7 C. J. 987, § 112 and cases cited. Defendant cannot be convicted unless intercourse with the prosecutrix is shown within the period of gestation (unless the child is premature). 7 C. J. 995, § 129; Allred v. State, 151 Ala. 125, 44 So. 60; Sonnenberg v. State, 124 Wis. 124, 102 N. W. 233; Souchek v. Karr, 78 Neb. 488, 111 N. W. 150; Masters v. Marsh, 19 Neb. 458, 27 N. W. 438; 9 Current Law, 386; Sang v. Beers, 20 Neb. 365, 30 N. W. 258; Stoppert v. Nierle, 45 Neb. 105, 63 N. W. 382; Matteson v. People, 122 Ill. App. 66; Menn v. State, 132 Wis. 61, 112 N. W. 38.

This question was before this court in the case of State ex rel. Pepple v. Banik, 21 N. D. 417, 131 N. W. 262 and this court in reviewing the case said: "During the trial of the case, it was argued that the children born to the complaining witness of necessity must have been premature. The complaining witness alleged that the children were begotten on or about the 17th day of March, 1908. In order to show that the children were in fact of premature birth, the counsel for the plaintiff asked the prosecuting witness the following questions: 'Can you remember how long they were from head to soles of the feet?' 'Can you tell generally what the length of them was from the head to the feet?' 'Do you know what the length of them was?' 'Can you tell generally what the length of them were from the head to the feet?'" On objection to these questions and upon the answers of the prosecuting witness the state based in part the hypothetical questions propounded to a physician. The prosecuting witness claimed that she and the defendant had had sexual intercourse for the first time on the 17th day of March, 1908. There was no error in overruling the objections to these questions, nor in permitting the physician to testify as to whether the children of the length and weight testified to by the prosecuting witness, conceived at the time alleged and born at the time admitted, were in fact premature. The prosecutrix testified that one

of the children lived only twenty-one days; that each child was about a foot long, and weighed from $5\frac{1}{2}$ to 6 pounds; and the state had a right to assume these as facts, and then to ask the expert as to whether, in his opinion, the children were in fact prematurely born. Upon this evidence it was held that the following instructions were sufficient, namely: " 'As the testimony of the complaint shows the birth of the children within 244 days of the alleged acts of intercourse with the defendant, the burden is upon the plaintiff to establish, by a fair preponderance of the evidence, that the children were a premature birth, and unless you believe from the evidence that the children were in fact of premature birth, then I charge you that your verdict must be in favor of the defendant.' "

In the case of State v. Peoples, 9 N. D. 146, 82 N. W. 749, "The court said to the jury, in substance, in its charge, that it was a matter of common knowledge that the shortest period of gestation was about 260 days; and applying this statement to defendant's testimony, the court further instructed the jury as follows: 'If you find that the defendant did not have sexual intercourse with the complaining witness between the 10th day of July and the 10th day of September, 1897, then you must find the defendant not guilty.' " The court said: "This is a proper charge, under the evidence."

In the case of Souchek v. Karr, 78 Neb. 488, 111 N. W. 150, at page 151, the Nebraska court said "It is prejudicial error for the trial court to refuse an instruction, which clearly, unequivocally and emphatically placed the burden upon the complainant of showing that her child was of premature birth, because her right of recovery against the defendant depends absolutely upon this fact." In that case the complainant's testimony, like the testimony of the complainant in the instant case, showed that the intercourse was outside of the ordinary period of gestation.

In the case of Ronan v. Dugan, 126 Mass. 176, the court said "In Eddy v. Gray, 4 Allen, 435, the court said: 'where the intercourse offered to be proved occurred more than ten months before the birth, the evidence was held to be inadmissible without proof that the period of gestation was prolonged beyond the usual duration.' We see no reason why the same rule should not be followed when the intercourse offered to be proved took place less than seven and a half months be-

fore the birth, in the absence of any proof that the birth was premature. The testimony of the complainant and the presumption of law as to the period of gestation concurred; and the judge, who tried the case without a jury, might well consider the evidence offered by the defendant as immaterial."

In the instant case the evidence offered by the complainant does not concur with, but is in conflict with, the period of gestation. In fact it is more than thirty days short. There should have been evidence offered on the question of the maturity or the immaturity of the child at its birth. The physician who attended at the birth of the child or any physician of ordinary experience who attends at the birth of children may testify on the question of their maturity or their immaturity. Young v. Makepeace, 103 Mass. 50.

In the case of Gillis v. State, 206 Wis. 150, 238 N. W. 804, there was expert testimony that the period of gestation was 280 days and that the child of the complaining witness was slightly overweight and probably a little past due. "There was no evidence indicating that the child when born had any other characteristics than those to be expected in a normal child. The plaintiff testified that she had never at any time had intercourse with any other man. Upon her testimony the period of pregnancy was 320 days, being twelve days beyond eleven lunar months, the ordinary period being ten lunar months. . . . The medical testimony in this case as well as the medical literature to which we have been referred, indicates that while such cases of extended pregnancy as this are not unknown, they are extremely rare. The whole matter is discussed in Re McNamara, 181 Cal. 82, 183 P. 552, 7 A.L.R. 313. In that case the last intercourse was 304 days prior to the birth of the child and the court held that beyond a reasonable doubt the husband was not the father of the child. Although that case related to the application of the presumption of legitimacy rather that paternity of a bastard child, the cases were brought together and exhaustively reviewed. . . . The most that can be said, and to say that taxes one's credulity, is that such a thing was barely possible. The fact that in the course of the history of medical science a few cases have been gathered together which in the main depend for their authenticity upon the unsupported statement of the mother, from

which it appears that such protracted pregnancies may occur, does not satisfy the rule of law. : . . If there was any evidence of a delayed pregnancy, if there was any evidence that the child when born exhibited signs of a protracted pregnancy or other untoward circumstances, the case might be quite different."

This language forcibly applies to the facts in the instant case. When the complainant was fifteen years of age she had affairs with two young men, who were convicted and sent to the penitentiary for statutory rape. The record shows that the complainant was a wayward, if not an incorrigible girl, and her parents sent her, in charge of the county welfare worker, to an institution in Montana in the fall of 1929. She returned to Jamestown in June 1931 and immediately began going to dances at Hoffman's Bowery, at Edmunds and Buchanan. She was introduced to Muldoon by another girl on the streets in Jamestown the last of July, but this was only a formal introduction and she did not see him again, she testified, until the first week in August and according to the defendant's testimony it was after the 15th of August. He testified that he knew it was after the 15th because it was after pay day and pay day was the 15th of the month. She testified that on the first occasion they were out together there was illicit intercourse between them. She further testified that in the first part of September there were two acts of illicit intercourse. When shown two letters that she had written to the defendant, dated September 15 and 16, in which she complained about his not coming to see her she admitted that her statements about the two acts of illicit intercourse in the forepart of September were false. The testimony of the complaining witness shows that she was back in Jamestown attending dances in distant country towns in June and July at the time when the child must have been conceived, if it was a mature child. The presumption is that it was and there is no evidence that it was not. There is direct conflict between the defendant and the complainant. He testified that he never had any intercourse with her at any time and the presumption that the child was mature at its birth, the absence of evidence that it was premature, the failure of the court to require testimony of the period of gestation by some witness competent to testify and the failure to instruct on the period of gestation together with the very

doubtful character of the complainant's testimony in our opinion requires a new trial and a new trial is ordered.

MOELLRING, J., concurs.

CHRISTIANSON, J., concurs in the result only.

NUESSLE, J. (specially concurring). I concur in the result in this case because it seems to me that the uncertainties of the record are such that a new trial may well be had in the interests of justice. I am unable to concur, however, in what is said with respect to the requirements of proof placed upon the complainant.

As I understand the record the child in this case was born on April 7. The complaining witness testified that she had had intercourse with the defendant during the first week of August preceding its birth, and that she had not had intercourse with anyone else for a very long time prior to that time. The defendant testified that he had never had intercourse with the complaining witness, though he admitted he had been in her company during the month of August and thereafter. There is no evidence as to the appearance, size, or condition of the child at the time of its birth or as to whether it was premature or full term. According to the testimony of the complaining witness the period from her first act of intercourse with the defendant to the date of the birth of the child was from 240 to 250 days, or some 30 to 40 days less than the average period of gestation. If this was the truth then the defendant is the father of the child whether it was full term or premature. And the jury by their verdict found that it was the truth. Certain it is this was no immaculate conception. Nature is capricious. The stork does not fly on a regular schedule. He is notoriously erratic and may be days early or late without apparent reason or excuse. If the defendant wished to offer evidence other than his own to support his contention that he was not the father he might have done so, means permitting. He could, if it were the fact, establish that the child was full term. Then the jury might have been appropriately instructed and their verdict might have been different. But the burden was not on the State to show by further evidence that the child was premature

since there was no challenge to the State's case other than the defendant's denial of intercourse.

BURR, J., concurs.