# STATE OF NORTH DAKOTA, Respondent, v. DONALD SOUTH-ALL, Appellant.

(197 N. W. 866.)

**Bastards — burden on state to prove material facts by preponderance of evidence.**

1. In bastardy proceedings, the rules governing trials in civil cases apply; the state has the burden of proving the material facts by a preponderance of evidence.

**Bastardy proceeding — object to secure maintenance and education of child; proof beyond reasonable doubt not required; only a fair preponderance of evidence necessary.**

2. Where the testimony tends to show that the defendant and another man carnally knew the complaining witness during the period of gestation, and where the complaining witness positively denies connection with a man other than the defendant, and testifies that the defendant is the only man who ever had carnal connection with her, it is held, for reasons stated in the opinion, that the findings of the trial court against the defendant on the issue of paternity have sufficient support in the evidence.

Opinion filed March 12, 1924.

Appeal and Error, 4 C. J. § 2722 p. 775 n. 26; § 2727 p. 777 n. 60. Bastards, 7 C. J. § 58 p. 967 n. 56; § 126 p. 994 n. 51; § 128 p. 995 n. 58, 60.

A proceeding in bastardy. Appeal from the District Court of La-Moure County, *McKenna,* J.

Affirmed.

*Hutchinson & Lynch,* for appellant.

It is well-settled rule of law that in a bastardy proceeding, the defendant has a right to present evidence of acts of intercourse with others than defendant at a time when in the course of nature, the child could have been begotten. 7 C. J. 990.

Paternity cannot be established against defendant beyond reasonable doubt if it appears that the prosecutrix had intercourse with another man at a time consistent with the latter's responsibility for

Note.—(1) Presumption and burden of proof in bastardy proceedings, see note in L.R.A.1918C, 891; 3 R. C. L. 761; 1 R. C. L. Supp. 890.

her pregnancy. Under such circumstances, the law refuses to recognize the ability of the mother or any one else to know with any sufficient measure of certainty, that defendant is, in fact, the parent. Bussey v. State (Wis.) 108 N. W. 64; Baker v. State (Wis.) 2 N. W. 354; People v. Kaminsky (Mich.) 41 N. W. 833; State ex rel. Mundt v. Meier (Iowa) 118 N. W. 792; Esdale v. Reynolds (Mass.) 9 N. E. 13; Stoppert v. Nierle (Neb.) 63 N. W. 382.

*E. F. Coyne,* for respondent.

The court is the exclusive judge of the credibility of the witness. It may give credit to the testimony of one witness and discredit the testimony of others. State v. Hiertz, 41 N. D. 55, 170 N. W. 118; State v. Wrangler (Iowa) 132 N. W. 22; Altschuler v. Algaza (Neb.) 21 N. W. 401; State v. Brandner, 21 N. D. 310, 130 N. W. 941; State v. Bennik, 21 N. D. 417, 13 N. W. 262.

Johnson, J. This is a bastardy action. The defendant appeals from a judgment of the district court of LaMoure county and from an order denying a motion for a new trial. The court made formal findings of fact.

The only question is as to the sufficiency of the evidence to support the finding of fact that the defendant was the father of the bastard child of one Weaver, the complaining witness in the case.

The salient facts are as follows: The defendant, age twenty-one, admits that he carnally knew the complaining witness, age twenty-six on May 13, and again on May 20, or 23, 1922. On March 11, 1923, a child was born to complaining witness, the result, as she claims, of the amorous relations with this defendant of the preceding May. She asserts emphatically that never did any man, other than the defendant, know her and that he is the father of her child. A physician, called by the state, testified as to the usual period of gestation and that a child borne on March 11, 1923, might have been begotten on May 13 or May 20, or 23, 1922, although if intercourse took place the latter part of May or the first part of June, 1922, it would be more probable that conception took place on account of the intercourse on the latter date.

The defendant sought to prove that the complaining witness had intercourse with other men, about the time when the incidents to which she testifies took place, which caused pregancy. To show this, he called

one Fenno, who admitted that on or about the last of May or first of June, 1922, he had been alone with the complaining witness in a certain store building after dark and perhaps with no lights turned on or burning, but refused, on the ground that it might incriminate him, to testify as to what took place. One Winegar was also called by the defendant. He showed, if not less modesty than Fenno, certainly less caution, for he testified that he carnally knew the complaining witness three times, in the latter part of May and the first part of June, 1922. He is entirely willing that any inferences the laws of life justify be drawn from the incidents detailed by him. The only tangible result of his extraordinary candor was an order to the sheriff from the bench to detain him on the charge of fornication. The complaining witness categorically denied the truth of Winegar's story, although she said that on one of three occasions when she went out riding with him, he developed symptoms of an extremely amatory nature, which, however, were so promptly and decisively squelched by her that whatever ambitions he may have entertained "died a-bornin." She likewise denied any improper connection with Fenno.

Such, in broad outline, is the story unfolded in the record. It is not necessary to give the salacious details. The trial court expressly found that the defendant was the father of the child. The trial court was not obliged to accept the story of the witness Winegar as conclusively on the question of paternity; the complaining witness emphatically denied ever having had connection with any man other than the defendant. In a case like this, tried to the district court without a jury, and not properly triable de novo in the supreme court, the findings of the trial court come like legal conclusions and are presumed to be correct; the burden is on the appellant to show error and a finding based on parol evidence "will not be disturbed unless clearly and unquestionably opposed to the preponderance of the testimony." Jasper v. Hazen, 4 N. D. 1, p. 5, 23 L.R.A. 58, 58 N. W. 454. This rule is reaffirmed in Griffith v. Fox, 32 N. D. 650, 156 N. W. 239; Hartung v. Manning, ante, 478, 196 N. W. 554. We are satisfied that this is the correct rule, certain expressions in other cases to the contrary notwithstanding. See Griffith v. Fox, supra, at p. 654 of the official report. We think there is sufficient evidence to support the findings of the trial court and to justify the judgment entered pursuant thereto.

See State v. Peoples, 9 N. D. 146, 82 N. W. 749; State v. Hiertz, 41 N. D. 55, 170 N. W. 118; State v. Fuchs, 48 N. D. 730, 186 N. W. 752.

It is contended by the appellant that the order of the trial court, directing the sheriff to hold the witness Winegar on the charge of fornication, conclusively shows that the court below believed his testimony; that it was, therefore, impossible for the complaining witness to say, with any degree of certainty or probability, whether defendant or Winegar was the father of the child; and that, therefore, the state failed to sustain the burden of proof, with the result that the evidence is insufficient to sustain the finding as to paternity and the judgment entered pursuant thereto. The trial court, doubtless moved to indignation by the testimony and demeanor of Winegar and, perhaps, other witnesses, quite severely castigated Winegar at the conclusion of the trial. Such remarks are made a part of the record and it is urged by defendant that they indicate that the court believed that Winegar told the truth when he said he had committed fornication with the complaining witness. The court, however, afterwards made formal findings of fact on which the order for judgment is based. The court found against the defendant on the issue of paternity and the only question before us is whether the evidence supports that finding.

It should be noted that pregnancy is accompanied by symptoms or signs which indicate the condition, not only to the skilled physician, but to the woman herself; that some of the signs appear at an early date after conception—perhaps within a very few days afterwards. When the subjective signs appear, the woman having been exposed to the possibility of conception, medical authorities say that pregnancy is presumptive. It may not be *certain* that the condition exists until the positive or diagnostic signs appear, such as the fetal heart sounds, the fetal movements, ballottment, etc., but the testimony of the woman herself may nevertheless be of controlling importance upon the question of the time when conception took place, and it would not be correct to say, as urged by defendant, that her testimony was entitled to no weight on this point. In the case at bar, on defendant's own theory, some time elapsed between the last connection with defendant and the alleged relations with the witness Winegar. During such period she might well have discovered some of the signs and symptoms that early

appear and which indicated to her the probability that she was enceinte. Furthermore, after discovering that she was pregnant, she would be able to understand the meaning of subjective signs which prior to such discovery might have had but little significance to her. "Proof of connection with another man does not necessitate a finding for the defendant and is merely a circumstance to be considered in determining the child's parentage." 7 C. J. 994. See also State ex rel. Bishop v. Liston, 110 Neb. 487, 194 N. W. 477. It follows, on the facts here, that, even if the trial court did believe the testimony of Winegar, there is, notwithstanding, sufficient evidence in the record to support the finding that defendant is the father of the child. See 1 Peterson, Haynes & Webster, Legal Med. & Toxicology, 1923, p. 930 ff; and 2 Witthaus & B. Med. Jur. p. 553 ff. To the effect that the testimony of Winegar does not require a reversal for other cogent reasons, see Johnson v. State, 133 Wis. 453, 113 N. W. 674.

Counsel relies on and quotes from Wisconsin cases to the effect that "paternity cannot be established against defendant *beyond a reasonable doubt* if it appears that the prosecutrix had intercourse with another man at a time consistent with the latter's responsibility for her pregnancy." (Italics are ours.) Busse v. State, 129 Wis. 171, 108 N. W. 64; Baker v. State, 47 Wis. 111, 2 N. W. 110, 2 Am. Crim. Rep. 606. Counsel likewise cite cases from Michigan and Indiana. These authorities are not controlling in this state. The object of a bastardy proceeding is not to punish the father, but to insure provision for the maintenance and education of the child. The proceeding is "not strictly either a civil or a criminal proceeding." State v. Lang, 19 N. D. 679, 683, 125 N. W. 558; State v. Sibla, 46 N. D. 337, 179 N. W. 656. Therefore, the rule that the defendant's guilt must be proved beyond a reasonable doubt does not apply. It is sufficient if the evidence preponderate in favor of the finding that the defendant is the father of the child. State v. Goetz, 21 N. D. 569, 131 N. W. 514; State v. Brandner, 21 N. D. 310, 130 N. W. 941; 7 C. J. 995 and note. "A bastardy proceeding which is brought under the provisions of chap. 5, Rev. Codes 1905 (chap. 5, Code Crim. Proc. Comp. Laws, 1913), although quasi criminal in its nature, is governed, in so far as its trial is concerned, by the law regulating civil actions. Par. 1

Syllabus, State v. Brunette, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916E, 340; State v. Hiertz, 41 N. D. 55, 170 N. W. 118.

The findings and the judgment have sufficient support in the evidence.

The judgment is affirmed.

BRONSON, Ch. J., and CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.